## Anna S. Kaylor, Defendant in Error, v. O. A. Smith, Plaintiff in Error.

1. HARMLESS AND PREJUDICIAL ERROR—*when improper remarks of plaintiff during trial are harmless.* Improper remarks made by plaintiff in the presence of the jury during the trial of an action for forcible entry and detainer of office rooms after notice to quit, to the effect that checks for rent received from the tenant were generally bad, that the defendant had continued as tenant against her will, and that he had been "wished on her" as a tenant, are not prejudicial where they were stricken out by the trial court and there was no issue to rents before the jury.

2. FORCIBLE ENTRY AND DETAINER—*exclusion of immaterial evidence not error.* Refusal to permit a tenant's wife to testify as to statements made to her by the landlord relative to payment of the rent by the defendant on the 15th of the month is not erroneous in an action for forcible entry and detainer where there is no evidence that the wife was an agent of the tenant and at the time the alleged remarks were made there had been no change from the original lease agreement fixing the first of the month as the date for payment of rent.

3. TRIAL—*when questions tending to disgrace party are not prejudicial.* In an action for forcible entry and detainer of office rooms by a lawyer after notice to quit, the tenant is not prejudiced by cross-examination of him as a witness as to whether or not he was a practicing attorney on a certain date and by questions suggesting that his cessation of practicing prior to that date may have been due to proceedings against him in the Supreme Court, where examination of an incompetent witness as to an immaterial matter by him laid the foundation for the cross-examination and the court sustained objections to all questions going to the cause for his suspending practice.

4. FRAUDS, STATUTE OF—*waiver of by failure to raise.* In an action of forcible entry and detainer commenced in the justice court without formal pleadings and tried *de novo* on appeal to the county court, the landlord cannot avail himself of the statute of frauds as a bar to the tenant's claim that the original term had been extended by oral agreement and holding to a term from year to year where no objections to evidence were interposed on that ground and the statute was not otherwise raised by plaintiff.

5. LANDLORD AND TENANT—*sufficiency of notice to quit on first day of month when term runs from that date.* A landlord's notice to the tenant to quit and surrender up possession of the demised premises on December 1 is sufficient even though the term under

the lease runs from the first day of the month and the rent is all paid for the current month, and it is not necessary to the validity of the notice that the last day of the preceding month be specified as the date upon which to surrender possession.

6. APPEAL AND ERROR—*review limited to matters shown in bill of exceptions.* Alleged misconduct of counsel in the argument of a case to the jury will not be considered upon review by writ of error where the alleged statements are not preserved in the bill of exceptions and no objections thereto are shown by the bill of exceptions to have been made in the lower court.

Error by defendant to the Circuit Court of Tazewell county; the Hon. CHARLES SCHAEFER, Judge, presiding. Heard in this court at the October term, 1922. Affirmed. Opinion filed January 17, 1923.

W. A. POTTS and O. A. SMITH, *pro se,* for plaintiff in error.

RALPH DEMPSEY, for defendant in error; W. J. REARDON, of counsel.

MR. JUSTICE SHURTLEFF delivered the opinion of the court.

This is an action of forcible entry and detainer, brought December 8, 1920, to recover possession of an office room in the Steinmetz building in the City of Pekin, Tazewell county, owned by defendant in error under the will of her father. There was a finding for the plaintiff in the justice court. The defendant, plaintiff in error in this court, appealed to the county court of Tazewell county where a trial was had in which there was a verdict for appellee, from which judgment this writ of error is sued.

On January 21, 1914, plaintiff and defendant entered into a written lease for the premises in question, whereby the defendant in error rented said premises to the plaintiff in error for one year from the first day of February, 1914, to the first day of February, 1915, at an annual rental of $75, payable on the first day of September, 1914.

It is agreed by both parties that upon October 15, 1914, Anna S. Kaylor, defendant in error, served upon the defendant a notice in writing in which she stated she had elected to terminate the lease dated January 21, 1914, and demanding that appellant deliver up possession on February 1, 1915, and further stating: "This notice is given you for the reason that I do not desire to renew said lease above referred to and will not permit your further occupancy of said premises by virtue of any renewal of said lease or continuation of the term thereof under a year to year holding by you."

The plaintiff in error, Smith, claims that prior to February 1, 1915, he entered into a new arrangement with defendant in error for the renting of said premises which amounted to an annual renting of the same, while the defendant in error, admitting that an arrangement was entered into on the part of her husband in her behalf with plaintiff in error prior to February 1, 1915, insists that it was an arrangement that plaintiff in error should continue in the possession of said premises as a tenant for from thirty to ninety days at a rental of $7 per month, and that under this verbal agreement the appellant remained in possession of said premises until in March, 1918, when he entered into another verbal agreement with the appellee to pay a rental of $10 per month on a month-to-month tenancy. The plaintiff in error, Smith, insists that under the oral lease he continued uninterrupted from February 1, 1915, until shortly prior to the first of February, 1918, at which time the plaintiff, below, sought to raise the rent at the commencement of the new annual period, February 1, 1918; that there was considerable discussion between the plaintiff and defendant before an agreement was reached between them; that this discussion continued from shortly before February 1, 1918, up to about March the 24th before an agreement was reached; that during this

period the plaintiff, below, would not receive the rent at the original rate and the defendant would not pay the raise demanded; that this difference was not settled between the parties until March 24, 1918, at which time the plaintiff and defendant reached an agreement that the defendant should continue to pay $7 per month as monthly instalments and in addition thereto $36 per year, which the plaintiff in error said was the amount figured out by the electric light company for furnishing heat for the premises in question for the heat year, which was to be paid in monthly instalments of $3 each in addition to $7 rent instalment each month. Plaintiff in error claims that this tenancy was to commence on the first day of May in order to correspond with the end of the heat year; that when this agreement had been reached on March 24, the plaintiff in error paid to the defendant in error $10 to cover the heat and rent for the month of February, 1918; that none of these payments for rents or other charges was ever at any time payable in advance; that this agreement included the payment of the $3 monthly heat instalment being paid, beginning with the month of February, 1918, and plaintiff in error insists that there has been no change made since that agreement was entered into on March 24, 1918, except that on or about the 15th of July, 1919, Mrs. Kaylor desired to and did change the time of collecting the rent from the first to the 15th of the month; that this only continued for a few months when Mrs. Kaylor again began to collect the rent on the first, as had always been the case before.

The defendant in error, Mrs. Kaylor, desiring to cancel the existing tenancy and recover possession of her premises, on the 29th day of October, 1920, caused a notice to be made on that day and signed by her which was served personally upon the plaintiff in error on the following day. The notice is in the following form and language:

"To O. A. Smith:

"Take notice that I have elected to terminate your month to month lease under which you have been and are now occupying the following described property, to-wit: The easterly rear room in the second story of the two story brick building situated on the west twenty-one (21) feet of the east half of lot 14 in block 64 in the original town, now city of Pekin, which said building is known as No. 345 Court street in said city of Pekin; and you are further hereby notified to vacate said premises above described and deliver up possession thereof to me on the first day of December, A. D. 1920.

"Dated at Pekin, Illinois, this 29th day of October, A. D. 1920.

               Mrs. Anna S. Kaylor.

"Owner and lessor of the premises above described."

Attached to which is the sheriff's return of service upon plaintiff in error on the 30th day of October, 1920.

Plaintiff in error did not vacate. Complaint was filed in justice court December 8, 1920. The summons was served December 10. The trial was had in the justice court December 31, 1920, in which there was judgment and appeal to the county court, as hereinbefore set forth.

In the original complaint there was a claim for rent which was dismissed upon the trial in the county court, and it appears that all rents have been paid up to December 1, 1920, and the only issue in this case is as to the right of possession of the premises.

Trial in the county court was by jury, which, after listening to all the evidence and the instructions of the court, found a verdict in favor of plaintiff in that court, defendant in error here.

The plaintiff in error makes various assignments of error as to the proceedings in the court below: That the plaintiff below in her testimony made im-

proper remarks, such as that the defendant sent her bad checks; that she "finally had it out with him on that account"; that she "desired to terminate the tenancy but she didn't"; that "the defendant continued as her tenant against her will after February 1, 1915"; that his "checks were generally bad"; that "she didn't remember of receiving any checks that were cashable"; and again she said that "the defendant was wished on her as a tenant."

The statements of the witness for the most part were stricken out by the court but still were improper and if the issue of rents was still in the case would be very prejudicial indeed. However, inasmuch as that issue has been removed from the case, and the remarks were stricken out, we do not deem the same reversible error as to the issue remaining in this case, although such statements and suggestions by witnesses, and especially by the parties themselves while upon the witness stand, are to be most seriously condemned, as doubtless they were by the court in this case.

Plaintiff in error assigns error in that his wife, Mrs. Smith, was not permitted to testify to a statement made by defendant in error, Mrs. Kaylor, in regard to the payment of rent on the 15th of the month, a statement claimed to have been made in the middle of July, 1919. No offer was made to show that Mrs. Smith was acting as the agent of the plaintiff in error, her husband, in this transaction in any manner. No arrangement was made at this time to effect the payment of rent on the 15th of each month, as now claimed, by either party, and we cannot see what materiality it would have in this case whether a change had been made in the date of the payment of rent or not, and in the opinion of the court the offer of proof on the part of Mrs. Smith was merely the offer to prove an immaterial transaction by an incompetent

witness and there was no error in the ruling of the court.

Plaintiff in error objects to certain questions put to him upon cross-examination, which we will quote: Plaintiff in error had testified to information he received through his wife on or about the 18th of July, 1919, in regard to a change of date in the payment of rent. On cross-examination, plaintiff's counsel asked him how long he had been a practicing attorney.

"A. About twenty years.

"Q. Were you a licensed practicing attorney on the 18th day of July, 1919?

"A. No, I was not.

"Q. What occasioned your ceasing the practice of law?"

This was objected to and the objection sustained.

"Q. Did the Supreme Court of this State have anything to do with that?"

It is objected to very strenuously by plaintiff in error that counsel for defendant in error by such a cross-examination sought to bring before the jury the fact or facts of some proceeding for disbarment that had been pending against plaintiff in error. The foundation for the cross-examination, it will be noticed, was based upon appellant's production of his wife to testify to an immaterial matter as having occurred in July, 1919, wherein the only possible competency of the witness would have been that she was acting as the agent of appellant. Counsel for plaintiff were on proper ground in the inquiry as to what was the business and profession of appellant at that time, and inasmuch as the court sustained objections to all questions going any further than that, and specifically as to any proceedings in the Supreme Court, there is nothing before this court indicating wherein appellant could have been in any manner injured by the suggestions contained in the question. This becomes especially true, as will be shown later, wherein the arguments of counsel on both sides and the facts sub-

mitted resolve the issue in this case substantially into an issue of law and not an issue of fact.

There was assignment of other errors in the trial below, but outside of the one main assignment which we shall discuss, none of them do we deem of sufficient merit to reverse the case or to take time in pointing out their relationship to the issues in question.

It is conceded by both parties that there was a written lease prior to February 1, 1915. Defendant in error concedes that prior to February 1, 1915, an arrangement was made with her husband, Fred Kaylor, which amounted to a tenancy from month to month. Plaintiff in error claims that such arrangement of leasing and for occupancy amounted to a tenancy from year to year and that upon March 24, 1918, a new arrangement was made, as hereinbefore set out, that the beginning of the year should be May 1 in each year to correspond with the heat year.

Defendant in error contends that even though the arrangement was made, as claimed by plaintiff in error, having been made prior to the first day of February, 1915, and to comprehend a letting not to be completed within one year from the time of making the arrangement, that the same is void under the statute of frauds (*Marr v. Ray,* 151 Ill. 340; *Bergamo v. Tarello,* 183 Ill. App. 314), and that the doctrine of part performance is not applicable to a lease within the statute of frauds in a court of law. It is true that a contract so made comes within the inhibition of the statute. It is equally true that such a contract made on May 1 and consented to and to extend only for the term of one year and executed would be a valid lease for the term of one year, and the court so instructed the jury in this case.

The eighteenth instruction, on behalf of plaintiff, instructed the jury that if they believed from the evidence "that some time in the spring of 1918 the plaintiff and defendant entered into a parol or verbal

agreement or common understanding by which the defendant, O. A. Smith, rented the premises in question from the plaintiff for one year from May 1, 1918, to May 1, 1919, and that he, the defendant, occupied said premises and paid the rent or other charges under such agreement or understanding until the commencement of this suit, and if you further believe from the evidence that the defendant has held over after May 1, 1919, and up to the commencement of this suit, with the knowledge or consent of the plaintiff, and without further agreement between the parties or their authorized agents, relative to the letting of said premises, then and in that state of the proof the law presumes that a tenancy from year to year exists, between the plaintiff and defendant relative to the premises in question which can only be ended by a proper 60 days' notice in writing duly served upon the defendant at any time within four months preceding the last 60 days of the year, or by a mutual agreement between the parties.''

This cause was commenced in justice court. No pleadings were required, but we do not find in this record that the defendant in error objected to any evidence or to the above or any other instructions basing such objections or any of them upon the statute of frauds, and if such issue was not raised upon the trial of the case, any benefit of the statute of frauds must be considered waived.

However, this whole question of fact as to the manner of renting, whether it was a tenancy from month to month or whether there was a special agreement, as claimed by plaintiff in error, that the tenancy should run from year to year, was submitted to a jury and under most favorable and ample instructions upon the part of the court the jury has found the issue against the plaintiff in error upon evidence which, in the opinion of this court, is amply sufficient to support the verdict.

But the real issue in the case as argued by plaintiff in error is the sufficiency of the notice, dated October 29, 1920, to accomplish the cancellation of the month-to-month tenancy. Plaintiff in error contends that this notice should demand the vacation of the premises on the last day of the lease, namely, November 30, and that on December 1 the tenant has commenced a new month, and cites *Eppstein v. Kuhn,* 225 Ill. 115; *Goldsborough v. Gable,* 140 Ill. 269, holding: "A tenant for a year or a term of years under a lease who holds over without a new contract may be treated by the landlord as a trespasser or a tenant, and by accepting a month's rent he elects to treat him as a tenant from year to year and cannot afterwards repudiate this presumption without the consent of the tenant."

Plaintiff in error cites a considerable number of cases: *Weber v. Powers,* 114 Ill. App. 411; *Prickett v. Ritter,* 16 Ill. 96; *Bedell v. Clark,* 151 Ill. App. 419, and other authorities going back to the Year Books and to the time of Henry VIII, holding that: "A notice to terminate a tenancy, must, in order to be binding, clearly indicate the time when the tenancy is to expire, and must be so made as to expire at the end of the time during when the tenant may lawfully hold; if from year to year, at the end of the year, or, if from quarter to quarter, or month to month, and the like, it must expire at the end of such quarter, month and the like."

It is the contention of the plaintiff in error that this lease, even though conceded to be from month to month, running from November 1 to December 1—the last month for which rent was paid—expired at midnight between November 30 and December 1, and that therefore the notice to have been valid should have required a vacation of the premises upon November 30, 1920, and that, by not so requiring, a new month had commenced with the consent of defendant in error on December 1, 1920, and that therefore the notice

in this case was and is void to effect a cancellation of the tenancy prior to the commencement of this suit. In the *Weber* case it is held that a notice from a tenant to terminate a monthly tenancy should name the last day of the current month for the tenancy after the quitting time.

In *Bedell v. Clark,* 151 Ill. 419, the tenancy was from month to month. On the 29th day of July, 1908, Decker, for appellees, served on appellant a written notice to quit and deliver possession of the premises on the first day of September, 1908, and on August 1, 1908, called on appellant and collected another month's rent for the month of August. The rent was at all times paid promptly and Decker, the only witness sworn, said the last month terminated on the last day of August, and it was held in this case: "If, as is shown by the evidence, the last payment of rent was for the month of August, and it was desired to terminate appellant's tenancy at the end of that period, the notice should have been given to him to surrender on the last day of August, as that month would expire on that day at midnight. At least this is the latest date the notice should have specified to enable the appellees to bring their suit on September 1, 1908. *Prickett v. Ritter,* 16 Ill. 96," etc.

In *Bedell v. Clark, supra,* the suit was started on September first, and the basis of the holding seems to be that the notice to vacate should have been a notice to vacate on the last day of August in order to bring suit on the first day of September.

In *Gill v. Gill,* 161 Ill. App. 221, cited by plaintiff in error, the notice to terminate was dated December 27, 1909, stating: "You are hereby notified that I have decided to terminate your lease of my farm, known as the McConnell place, and you are hereby notified to quit and deliver up possession of the same to me, *within sixty days of this date.*" The tenancy did not

expire until March first, and it was held that the notice was bad.

In no case pointed out by plaintiff in error, except as heretofore cited in *Bedell v. Clark,* has it been held by our courts that a tenancy from the first day of the month to the first day of the following month was the statement of a tenancy which commenced with the first day of the month and expired with the last day of the month, and the holding in that case seems to be a holding that the notice was insufficient upon which to base a suit commenced on the first day of the month.

The whole subject seems to be fully discussed in *Prickett v. Ritter,* 16 Ill. 96, cited by plaintiff in error, where the court, after reviewing all of the authorities not only in England but in this country, states: "Under this review of the authorities, we are authorized to resolve these questions, now for the first time distinctly presented, by holding the notice necessary under a tenancy like the present, and that it should be given for one month, and terminating with the month as fixed by the rent day, or falling due of the rent."

Our Supreme Court again discussed the question in *Ball v. Peck,* 43 Ill. 482, and held that "a notice to terminate a tenancy from year to year, at will, or from month to month, requires timely notice before the end of the period to be given, notifying the tenant that the landlord elects to terminate the tenancy, and the time when it will expire."

From all of the authorities cited and from the best learning this court has been able to obtain upon the subject, the rule as laid down in *Prickett v. Ritter, supra,* fixing the end of the tenancy on the day as fixed by the rent day or falling due of the rent, has not been changed, modified nor any other rule adopted, and our courts have never said that a tenancy from November 1 to December 1, with the rent therefor payable on December 1, meant a tenancy from October 31

to November 30, or from November 1 to November 30, or a tenancy of any other date or duration except as specifically stated from November 1 to December 1, and under such a tenancy it is not to be construed that the tenant entered at midnight of October 31 or between October 31 and November 1, and was compelled to vacate at midnight between November 30 and December 1. But in the opinion of this court the term of the tenancy, November 1 to December 1, means exactly and literally what it says, and presupposes that the tenant may have entered at any time during or upon November 1 and may have at any time during the day of December 1 to vacate, and there is no more reason under the terms of such a tenancy to set it back to the last day of the month than there would be to set it back five days into the preceding month. This entire record shows that plaintiff in error himself so construed the tenancy. He said in his letter of July 18, 1919, that his term ran from the first of May to the first of May, with the rent and heat payable in monthly instalments on the first day of each month, and in the receipts offered in evidence (and quoted, *supra*) the payments were to be applied "from May 1, 1920," and all of the evidence in this record, as submitted and claimed by each party, shows that the tenancy, whether by year or by month, was to commence on the first day of the month and that the rent was payable on the first day of the month, not in advance but at the end of the month, and it is the opinion of this court that the notice served upon the defendant dated October 29, 1920, was sufficient to effect the cancellation of the lease.

Plaintiff in error complains of statements made to the jury by counsel in their argument in behalf of defendant in error, that such statements were misstatements of fact intended to prejudice the jury, and in fact upon the motion for a new trial plaintiff in error submitted the affidavit of a juryman stating that he

was influenced by such statements of counsel made to the jury in the argument of the case. It is sufficient to say that no objections were made to the court at the time such statements were made and that any such statements that may have been made upon the trial of the case should have been preserved by bill of exceptions and presented to this court in that manner. No such statements are preserved in the bill of exceptions and no objections thereto are preserved by bill of exceptions, and it is elementary that assignment cannot be made upon error except as shown by the bill of exceptions. The bill of exceptions is not to be amplified or enlarged by affidavits presented on a motion for a new trial.

The judgment of the lower court is affirmed.

*Affirmed.*